UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRIENDS OF GUALALA RIVER, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>GUALALA REDWOOD TIMBER, LLC,<br><br>Defendant. | Case No. 20-cv-06453-JD<br><br>**ORDER RE PRELIMINARY INJUNCTION**<br><br>Re: Dkt. No. 61 |

In this environmental lawsuit, plaintiffs Friends of Gualala River (FOGR) and the Center for Biological Diversity (CBD) challenge the Dogwood Timber Harvesting Plan (Dogwood THP) approved by the California Department of Forestry and Fire Protection (Cal Fire) for a logging project proposed by defendant Gualala Redwood Timber, LLC (GRT) in a privately-owned forest on the Gualala River floodplain. Plaintiffs allege that the logging will despoil the Gualala River ecosystem and result in a taking of four protected species: the California red-legged frog; the northern spotted owl; the Northern California steelhead; and the California Central Coast Coho salmon. *See* Dkt. No. 1. They have asked to enjoin implementation of the Dogwood THP under the Endangered Species Act, 16 U.S.C. §§ 1531 *et seq.* (ESA). Dkt. No. 61.

At first blush, this case appears to raise fresh legal questions about the Dogwood THP, but that impression is misleading. What the complaint does not disclose is that FOGR has already litigated the environmental impacts of the project in California state court, starting with a lawsuit filed in 2016. The state litigation resulted in substantial modifications of the Dogwood THP to reduce its impacts, and culminated in an opinion by the California Court of Appeal affirming the trial court's decision to lift a prior injunction against the logging. *Friends of Gualala River v. Dep't of Forestry and Fire Protection*, No. SCV262241, 2021 WL 6722107 (Cal. Ct. App. Feb. 2, 2021). Rather surprisingly, plaintiffs also made no mention of the Court of Appeal opinion

in their injunction motion, which was filed several months after the opinion was issued. This omission is all the more puzzling in light of the fact that plaintiffs filed a "statement of recent decision" that attached the opinion the day it was issued. Dkt. No. 41.

GRT's main opposition to an injunction is that res judicata bars plaintiffs' claims. GRT contends that the potential environmental impacts of the logging project, including its possible impacts on threatened or endangered species, were actually litigated in the state court proceedings, or could have been, and that plaintiffs are not entitled to a second bite of the apple here. Dkt. No. 78 at 7.[1] GRT has demonstrated that a California court would give preclusive effect to the prior judgments in FOGR's litigation. Consequently, the Court concludes that plaintiffs have not demonstrated a likelihood of success on the merits, or a serious questions going to the merits, and a preliminary injunction is denied.

## BACKGROUND

### I. THE DOGWOOD THP

Logging is a highly regulated industry in California. Before any trees can be cut, the Z'berg-Nejedly Forest Practice Act of 1973 and its implementing regulations, the Forest Practice Rules, require the preparation of a timber harvesting plan (THP) by a registered professional forester. Cal. Pub. Res. Code §§ 4551 *et seq.*; 14 Cal. Code Regs. §§ 895 *et seq.* The THP must be submitted to Cal Fire for review, public comment, and approval. Cal. Pub. Res. Code § 4581-82. The California Environmental Quality Act (CEQA) and its implementing regulations impose additional requirements on such projects. Cal. Pub. Res. Code, §§ 21000 *et seq.*; 14 Cal. Code Regs. §§ 15000 *et seq.*

GRT is a timber company that owns the forest to be logged. Dkt. No. 1 (Compl.) ¶ 15. Its proposal to harvest timber on its property was first approved by Cal Fire more than five years ago, in July 2016. Dkt. No. 63-1, Ex. B. (*Dogwood I* Compl.) ¶ 1. The initial THP underwent several rounds of revision, public comment, and judicial review over the next several years as the result of multiple challenges by FOGR in state court. This lawsuit focuses on a revised version of the THP

---

[1] GRT put a finer point on the res judicata arguments in a motion for judgment on the pleadings, Dkt. No. 63, which is incorporated by reference in the injunction opposition, Dkt. No. 78 at 2, 7.

1    that Cal Fire approved in March 2018, which is referred to as the Dogwood II THP in the state
2    court litigation, and as the Dogwood THP here.  *See* Dkt. No. 1 ¶ 15; *Friends of Gualala River*,
3    2021 WL 672107, at *1.
4        As it stands today, the Dogwood THP permits a timber harvest on GRT's property, which
5    is located upstream from the mouth of the Gualala River, on the border of Sonoma and Mendocino
6    counties.  Dkt. No. 1 ¶¶ 25, 28-29, 40.  Under the terms of the Dogwood THP, GRT will not
7    engage in clearcutting of trees, but will instead use restoration forestry methods and "light-touch
8    selection harvesting techniques."  Dkt. No. 71 (Kent Decl.) ¶ 18; Dkt. No. 72 (McMahon Decl.) ¶
9    26.  GRT is authorized to cut down an average of 12.5 of the estimated 285 trees per acre, and 52
10   acres of the total forest area of 342 acres will not be logged at all.  Dkt. No. 72 ¶¶ 12, 19.  No
11   logging of any sort can be done within 30 feet of the edge of the Gualala river under the terms of
12   the plan, which incorporates the Forest Practice Rules, 14 Cal. Code Regs. § 916.9(f)(2)(A).  Dkt.
13   No. 71 ¶ 9.  To preserve canopy cover, which is vital to the health of aquatic and riverine species,
14   GRT must retain the largest 13 to 20 trees growing on each acre.  Dkt. No. 72 ¶ 16.  To minimize
15   the impact of the logging operation, GRT will use only pre-existing logging roads and landings to
16   execute the project; no new roads are allowed.  *Id.* ¶ 13.  Since the terrain subject to the Dogwood
17   THP is "generally level," the risk of erosion is relatively low.  Dkt. No. 73 (O'Connor Decl.), Ex.
18   A at 10.  Even so, GRT is required to stormproof the logging roads "to ensure sediment is not
19   carried from them to watercourses by winter rains," which will reduce the potential impact of the
20   operation on aquatic species.  Dkt. No. 71 ¶ 33.

21   **II.    THE STATE COURT LITIGATION**
22       FOGR initially sued in state court to set aside the Dogwood THP in 2016.  Over the next
23   several years, FOGR filed successive actions challenging revisions to the plan.  The litigation
24   spanned five years and three separate lawsuits in state court.  Most of the challenges were
25   successful, resulting in revisions to the plan that reduced its overall impact on the area and the
26   sensitive species that live there.  The scope of GRT's logging project was substantially reduced,
27   and additional environmental controls were imposed.  Because this history is central to the res
28   judicata analysis, a detailed review is warranted.

3

In the initial lawsuit, filed in August 2016, FOGR sued GRT and Cal Fire under the California Environmental Quality Act (CEQA), Cal. Pub. Res. Code §§ 21000 *et seq.*, and the Z'berg-Nejedly Forest Practice Act of 1973, Cal. Pub. Res. Code §§ 4511 *et seq.* FOGR alleged that Cal Fire had not adequately assessed the environmental impact of the Dogwood THP. Dkt. No. 63-1, Ex. B (*Dogwood I* Compl.).[2] Tellingly for present purposes, FOGR expressly alleged that the Dogwood THP had failed to "provide an analysis of mitigation" as required by various laws and regulations, "including the Endangered Species Act." *Id.* ¶ 46. FOGR also referred to potential impacts on "threatened wildlife" species such as Steelhead and California red-legged frogs. *Id.* ¶ 3; *see also id.* ¶ 21 (referring to salmonid, amphibian, and other "special-status wildlife species," and "rare plants").

In March 2017, the Superior Court agreed with FOGR and set aside the initial Dogwood THP. Dkt. No. 63-1, Ex. C. In response, Cal Fire revised the Dogwood THP in several respects, reduced the total size of the proposed project from 402 to 342 acres, and submitted the plan for another round of public comment. *Friends of Gualala River*, 2021 WL 672107, at *1. Cal Fire approved the revised plan in March 2018, which is the operative Dogwood THP here. *Id.*

In April 2018, FOGR filed a second lawsuit against GRT and Cal Fire, this time over the freshly approved Dogwood THP. *See* Dkt. No. 63-1, Ex. E (*Dogwood II* Compl.). FOGR alleged substantially the same claims as in the first suit, and again expressly stated that the Dogwood THP continued to flout the Endangered Species Act with respect to salmonids, red-legged frogs, and other plants and animals. *See id.* ¶¶ 6, 42, 48, 49, 50, 51, 63, 68, 88. The Superior Court issued a preliminary injunction pending further proceedings. *See* Dkt. No. 63-1, Ex. F.

In October 2018, the Superior Court ruled in FOGR's favor on the claims that the Dogwood THP did not "adequately explain how and why current forest practices will avoid additional environmental damage and ameliorate past problems." *Friends of Gualala River*, 2021

---

[2] The Court may take judicial notice of the state court documents, *see U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992), and none of the parties argue otherwise. In addition, the rules of evidence are not strictly applied in injunction motions. *See Herb Reed Enters. v. Fla. Ent. Mgmt., Inc.*, 736 F.3d 1239, 1250 n.5 (9th Cir. 2013). The parties' objections to evidence, Dkt. Nos. 87, 94, are overruled for this reason.

WL 672107, at *2. The Superior Court also concluded that the Dogwood THP did not provide a sufficient explanation of potential alternative methods for use in the logging. *Id*. The Superior Court denied several other claims, including FOGR's allegations that the Dogwood THP "would negatively impact salmonids," "failed to identify rare plants," and did not adequately define the wetlands area. *Id*. None of the state court parties appealed the 2018 decision, and a final judgment enjoining the THP was issued in November 2018. *Id.* at *3; Dkt. No. 63-1, Ex. H. The injunction required Cal Fire to address the THP's deficiencies and prohibited GRT from conducting any operations until the trial court determined the sufficiency of the revisions. *Friends of Gualala River*, 2021 WL 672107, at *3.

Pursuant to the injunction, Cal Fire further revised the Dogwood THP in January and March 2019, and recirculated it for public comment on both occasions. *Id.* After a hearing on the sufficiency of these revisions in January 2020, the Superior Court found that Cal Fire had fully addressed the remaining issues with the Dogwood THP, and lifted the injunction. Dkt. No. 63-1, Ex. I.

This time, FOGR appealed. A stay *pendente lite* was issued in June 2020 to bar logging by GRT during the appeal. *Friends of Gualala River*, 2021 WL 672107, at *4. In February 2021, the California Court of Appeal affirmed the Superior Court's order lifting the injunction and permitting the Dogwood THP to be implemented. *Id.* at *13. The Court of Appeal presented a detailed recounting of the state court proceedings going back to 2016, and a well-reasoned review of the Dogwood THP. Among other conclusions, the Court of Appeal determined that Cal Fire had properly accounted for impacts on protected species, and that the Dogwood THP included measures to ensure that it "will not likely result in a take, nor have any adverse impact on" the foothill yellow-legged frog, a species that FOGR had highlighted as at risk. *Id*. at *10. The Court of Appeal also concluded that the Dogwood THP incorporated the anadromous salmonid protection (ASP) rules, which would substantially reduce environmental impacts on the fish and their ecosystems by prohibiting logging within 30 feet of the edge the Gualala river, maintaining shade canopies, and allowing older trees to topple naturally into waterways and thereby "increase stream habitat complexity." *Friends of Gualala River*, 2021 WL 672107, at *8. The Court of

1    Appeal noted that the Dogwood THP required GRT to stormproof existing roads to reduce
2    sediment delivery to waterways, and to use "skid trails" to protect plant species, measures it
3    concluded would "offset environmental damage caused by past harvesting projects." *Id*. at * 9.
4        FOGR did not seek further appellate review, and the Court of Appeal remitted the case to
5    the Superior Court on April 27, 2021, ending the lawsuit.  Dkt. No. 63-1, Ex. K at ECF p. 193.
6        FOGR filed a third lawsuit in September 2019, while the second suit was ongoing.  Dkt.
7    No. 63-1, Ex. L (*Dogwood III* Compl.).  It sought to prevent the implementation of the latest
8    iteration of the THP.  In March 2020, FOGR requested dismissal of the suit with prejudice, which
9    was granted.  Dkt. No. 63-1, Exs. M, N.  This third case closed the long chapter of state court
10   litigation, but otherwise has no bearing on the injunction motion here.

### III.    THE PRESENT LAWSUIT

In September 2020, FOGR and CBD jointly filed this case to challenge again the Dogwood THP adjudicated in the *Dogwood II* state court action.  Plaintiffs bring claims under the ESA for declaratory and injunctive relief.  The ESA was enacted to protect and conserve endangered and threatened species and their habitats, and embodies "a conscious decision by Congress to give endangered species priority over the 'primary missions' of federal agencies." *Ctr. for Biological Diversity v. EPA*, 847 F.3d 1075, 1084 (9th Cir. 2017) (quoting *Tenn. Valley Auth. v. Hill*, 437 U.S. 153, 185 (1978)).  "The ESA imposes a variety of procedural and substantive requirements to ensure that the actions of federal agencies do not harm listed species or critical habitats." *Ecological Rights Found. v. FEMA*, 384 F. Supp. 3d 1111, 1115 (N.D. Cal. 2019) (internal citations omitted).  Plaintiffs focus their claims on Section 9 of the ESA, 16 U.S.C. § 1538, which makes it unlawful to "take" any species listed as threatened or endangered.  To "take" means to "harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, or collect, or attempt to engage in such conduct." 16 U.S.C. § 1532(19).  Plaintiffs say that the Dogwood THP will result in the take of protected species of frog, owl, and salmonids, through habitat modification and degradation. Dkt. No. 1 ¶ 6.

On May 20, 2021, plaintiffs filed a motion for a preliminary injunction.  Dkt. No. 61.  The Court heard the motion on June 24, 2021.  Dkt. No. 95.  GRT stated that it was planning to begin

1   operations on July 21, 2021.  *Id.*  To preserve the status quo until the Court could decide the

2   injunction request, the Court granted a temporary restraining order on July 20, 2021, prohibiting

3   GRT from beginning timber operations pursuant to the THP for a 14-day period.  Dkt. No. 99.

## DISCUSSION

### I.    LEGAL STANDARDS

"Preliminary injunctions are 'an extraordinary remedy never awarded as of right.'" *Michigan v. DeVos*, 481 F. Supp. 3d 984, 990 (N.D. Cal. 2020) (citing *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)).  "'A plaintiff seeking a preliminary injunction must establish that he [or she] is likely to succeed on the merits, that he [or she] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his [or her] favor, and that an injunction is in the public interest.'" *Id.* at 990-91 (quoting *Winter*, 555 U.S. at 20); *see also Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (same).  "In our circuit, a plaintiff may also obtain a preliminary injunction under a 'sliding scale' approach by raising 'serious questions' going to the merits of plaintiff's claims and showing that the balance of hardships tips 'sharply' in his or her favor." *Id.* at 991 (quoting *A Woman's Friend Pregnancy Res. Clinic v. Becerra*, 901 F.3d 1166, 1167 (9th Cir. 2018) and *Vanguard Outdoor, LLC v. City of Los Angeles*, 648 F.3d 737, 740 (9th Cir. 2011)).  "In all cases, at an 'irreducible minimum,' the party seeking an injunction 'must demonstrate a fair chance of success on the merits, or questions serious enough to require litigation.'" *Maffick LLC v. Facebook, Inc.*, No. 20-CV-05222-JD, 2020 WL 5257853, at *1 (N.D. Cal. Sept. 3, 2020) (quoting *Pimentel v. Dreyfus*, 670 F.3d 1096, 1105-06 (9th Cir. 2012) (cleaned up); *see also Garcia*, 786 F.3d at 740 ("The first factor under *Winter* is the most important -- likely success on the merits.").

The injunction standards are tailored to a degree in ESA cases.  To establish irreparable harm, it is not necessary to show an "extinction-level threat" to an endangered species.  *Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 886 F.3d 803, 819 (9th Cir. 2018).  In addition, "the balance of hardships always tips sharply in favor of endangered species," *Marbled Murrelet v. Babbitt*, 83 F.3d 1068, 1073 (9th Cir. 1996), and the public interest also generally weighs "heavily in favor of [protecting] endangered species," *Sierra Club v. Marsh*, 816 F.2d 1376, 1383

1   (9th Cir. 1987). Even so, not every "'potential environmental injury automatically merits an

2   injunction.'" *Souza v. Cal. Dep't of Transp.*, No. 13-cv-04407-JD, 2014 WL 1760346, at *7 (N.D.

3   Cal. May 2, 2014) (quoting *Ctr. for Biological Diversity v. Cal. Dep't of Transp.*, No. C 12-02172

4   JSW, 2012 WL 5383290, at *8 (N.D. Cal. Nov. 1, 2012)). And demonstrating a likelihood of

5   success on the merits, or at least a serious question, remains the *sine qua non* of injunctive relief.

6   Consequently, when a plaintiff has failed to establish that element, "we need not examine the three

7   remaining *Winter* factors." *Doe v. Reed*, 586 F.3d 671, 681 n.14 (9th Cir. 2009).

## II. PLAINTIFFS HAVE NOT DEMONSTRATED A LIKELIHOOD OF SUCCESS OR A SERIOUS QUESTION ON THE MERITS

The threshold inquiry for injunctive relief is whether plaintiffs have demonstrated a likelihood of success on the merits, or at the very least a serious question, warranting an injunction. They have not. That is because they had their day in the California state courts, and principles of res judicata bar them from undermining the finality of those proceedings here.

The parties do not dispute that res judicata may be properly raised in opposition to a motion for a preliminary injunction, and our circuit has indicated the same. *See Tillett v. BLM*, 696 Fed. App'x 274, 275 (9th Cir. 2017) (unpublished). The fact that the Court of Appeal opinion in *Friends of Gualala River* and other state court decisions were not published is of no concern in the res judicata context. *See* Cal. R. Ct. 8.1115(b)(1) ("an unpublished opinion may be cited or relied on . . . [w]hen the opinion is relevant under the doctrines of law of the case, res judicata, or collateral estoppel.").

Two guiding concepts are in play here. One is the necessity of preserving the finality of orders and judgments. Parties who have had a full and fair opportunity to litigate their claims should not be permitted to undermine the finality of judicial proceedings by raising subsequent challenges arising from the same material facts in existence at the time of the prior judgment or order. *See Atwell v. City of Rohnert Park*, 27 Cal. App. 5th 692, 700 (2018). The other is a principle of federalism and comity. "[F]ederal district courts lack jurisdiction to review the final determinations of a state court in judicial proceedings." *Doe & Assocs. L. Offs. v. Napolitano*, 252 F.3d 1026, 1029 (9th Cir. 2001). Rather, federal courts must give full faith and credit to state

United States District Court
Northern District of California

court judgments under 28 U.S.C. § 1738. *San Remo Hotel, LP v. City & Cnty. of San Francisco*, 545 U.S. 323, 336 (2005); *Brodheim v. Cry*, 584 F.3d 1262, 1268 (9th Cir. 2009).

Turning to the specifics, the Court applies the California state res judicata doctrine because the final judgment was issued by a California state court. *Rangel v. PLS Check Cashers of Cal., Inc.*, 899 F.3d 1106, 1110 n.2 (9th Cir. 2018). Under this doctrine, a suit is precluded if "'(1) the decision in the prior proceeding [was] final and on the merits; (2) the present proceeding is on the same cause of action as the prior proceeding; and (3) the parties in the present proceeding or parties in privity with them were parties to the prior proceeding.'" *Id.* (quoting *Fed'n of Hillside & Canyon Ass'ns v. City of Los Angeles*, 126 Cal. App. 4th 1180, 1202 (2004)). "Res judicata not only bars issues actually litigated but also bars issues that *could have been* litigated, as long as the later-raised issues constitute the same cause of action involved in the prior proceeding." *Atwell*, 27 Cal. App. 5th at 698 (emphasis in original).

Neither party disputes that the opinion and final judgment of the California Court of Appeal in *Friends of Gualala River* is the operative decision for res judicata purposes here. Plaintiffs do not contest that the decision is a final judgment on the merits. That leaves two questions for the Court to resolve: did the decision involve the same cause of action as the ESA claims here, and did it involve the same parties, or a party in privity with the state court parties?

### A. The Causes of Action Are the Same

To determine whether a lawsuit raises the same cause of action as a prior case, California courts ask "whether 'they are based on the same primary right.'" *Atwell*, 27 Cal. App. 5th at 699 (quoting *Fed'n of Hillside & Canyon Ass'ns*, 126 Cal. App. 4th at 1202). "'[I]f two actions involve the same injury to the plaintiff and the same wrong by the defendant then the same primary right is at stake, even if in the second suit the plaintiff pleads different theories of recovery, seeks different forms of relief and/or adds new facts supporting recovery.'" *Id.* (quoting *Tensor Grp. v. City of Glendale*, 14 Cal. App. 4th 154, 160 (1993)). In the environmental context, subsequent cases that involve the "same project, the same [environmental review document], and substantially the same findings" are typically deemed to be based on the same primary right. *Fed'n of Hillside & Canyon Ass'ns*, 126 Cal. App. 4th at 1203; *see also Ebbetts Pass Forest*

*Watch v. Cal Fire*, 43 Cal. Rptr. 3d 363, 413-14 (2006) (when the same agency findings are involved, "it is clear the causes of action address the same injury and, thus, the same primary right."), *rev'd on other grounds*, 43 Cal. 4th 936 (2008).

That is the situation here. As the record of the state court litigation amply demonstrates, plaintiffs seek to re-assert in this case the same primary right raised in state court. The logging project is the same, the Dogwood THP is the same, and the rights plaintiffs seek to vindicate -- and the attendant injuries they seek to avert -- are also the same. Like the prior state action, this lawsuit alleges the same potential harm to the species that inhabit the Gualala River region. *See* Dkt. No. 1 ¶ 5 (the proposed logging project "is reasonably certain to kill, harm, and/or harass" the listed species); Dkt. No. 63-1, Ex. E ¶ 68 ("[T]he logging will adversely impact wetland areas or cause habitat modification [that] would harm or harass federally protected and listed species."). Even more to the point, FOGR expressly referred to the ESA as an element in the state court case. *See, e.g.*, *id*. ¶¶ 51, 68.

To be sure, as plaintiffs frequently observe, the prior suit was brought under the state CEQA and Forest Practice Act, while this suit is under the federal Endangered Species Act. Plaintiffs suggest that this difference alone is enough to cut off the application of res judicata, but that ignores the primary rights inquiry. "Even where there are multiple legal theories upon which recovery might be predicated, one injury gives rise to only one claim for relief." *Slater v. Blackwood*, 15 Cal. 3d 791, 795 (1975). The salient inquiry is not the statute that is sued on, as plaintiffs would have it, but whether the cases assert the same primary right to be free of a particular injury, such as the potential loss of critical habitat and species. There is no question here that the state and federal actions were brought to address the same injury.

Plaintiffs also say that the state action "asserted a procedural right under CEQA," while this case asserts a "substantive right" under the ESA. Dkt. No. 81 at 10. They read too much into this ostensible distinction. CEQA and the ESA are directed at avoiding the same types of injury to habitats and species, which is the key test of the primary rights doctrine. The California legislature enacted CEQA precisely to "prevent the elimination of fish or wildlife species due to man's activities . . . and preserve for future generations representations of all plant and animal

10

communities." Cal. Pub. Res. Code § 21001.  Congress said much the same for the ESA, which operates to "provide a means whereby the ecosystems upon which endangered species and threatened species depend may be conserved."  16 U.S.C. § 1531(b).  The ESA also has its own procedural requirements akin to CEQA's.  For example, the ESA does not flatly prohibit the "take" of endangered species in all circumstances, but rather implements procedures such as an application process for incidental take permits, through which takings may lawfully occur.  16 U.S.C. § 1539; *see also Ecological Rights Found*, 384 F. Supp. 3d at 1115 (describing ESA consultation procedures).

Plaintiffs also gloss over the fact that the state action brought claims under the California Forest Practice Act and its implementing regulations, the Forest Practice Rules.  Dkt. No. 63-1, Ex. E ¶¶ 45, 60.  This is an important factor because the Forest Practice Rules, 14 Cal. Code Regs. § 898.2, cross-reference the Endangered Species Act and require Cal Fire to assess whether a proposed THP would result in a taking of species listed as rare, threatened, or endangered by the National Marine Fisheries Service or the Fish and Wildlife Service.  The rules direct that Cal Fire "shall disapprove" a THP that would either result in a taking "or would cause significant, long-term damage to Listed Species."  14 Cal. Code Regs. § 898.2(d).  In effect, Cal Fire was required to address the ESA in approving the Dogwood THP.  FOGR acknowledged this, albeit rather tacitly, in the state action complaint.  *See* Dkt. No. 63-1, Ex. E ¶¶ 45, 60 (citing 14 Cal. Code Regs. § 898.2).

Plaintiffs make a final effort to avoid the primary rights doctrine by suggesting that the California Supreme Court has declared that "parallel state and federal laws" necessarily involve different primary rights.  *See* Dkt. No. 81 at 11 (citing *Agarwal v. Johnson*, 25 Cal. 3d 932, 955 (1979)).  *Agarwal* did not go that far.  The case involved state law claims for defamation and intentional infliction of emotional distress, and a federal claim of employment discrimination under Title VII.  The California Supreme Court applied the same primary rights framework discussed above to conclude that a federal judgment dismissing the Title VII claim did not bar the state defamation and emotional distress claims because Title VII addressed a wholly different harm, namely, "discriminatory employment practices."  *Agarwal*, 25 Cal. 3d at 955.  No similar

11

apples and oranges difference distinguishes the potential environmental injuries alleged here and in the state court action.

Overall, the record before the Court demonstrates that the same primary right is at issue here and in the prior state court action. There is also no question that the ESA claims alleged in this case could have been litigated in the prior proceeding.[3] FOGR expressly stated in the *Dogwood II* complaint that the THP did not adequately address potential impacts on "salmonid and other special-status wildlife species," including "protected" animals and plants, Dkt. No. 63-1, Ex. E ¶¶ 6, 21, 24, 48, and that it did not "provide a description or analysis of mitigation needed . . . under various laws and regulations, including the Endangered Species Act," *id.* ¶ 51. It is abundantly clear that FOGR knew about potential ESA concerns, and could have formally pursued ESA claims in the prior cases. This is not a situation where the facts were hidden from FOGR, or some other good reason prevented it from acting on the ESA.

### B.  The Parties Are the Same

The question of whether the parties are the same is substantially more streamlined. FOGR was the plaintiff in the state actions, and is a plaintiff here. GRT was a defendant in the state actions, and is the defendant here. Nothing more needs to be established on this score. *See Mycogen Corp. v. Monsanto Co.*, 28 Cal. 4th 888, 896 (2002).

Plaintiffs suggest that the addition of CBD as a new plaintiff derails the application of res judicata, but the point is not well taken. California courts apply a "practical concept of privity." *Atwell*, 27 Cal. App. 5th at 702 (internal citation omitted). "[T]o maintain the stability of judgments," California courts will enforce preclusion against a party that shares "an identity or community of interest" with a party in the prior action. *Id*. at 702-03 (quoting *Castillo v. Glenair, Inc.*, 23 Cal. App. 5th 262, 276-277 (2018)). "Put another way, privity, as used in the context of res judicata or collateral estoppel, does not embrace relationships between persons or entities, but rather it deals with a person's relationship to the subject matter of the litigation." *Id*. at 703

---

[3] Plaintiffs do not disagree that they could have brought an ESA claim in state court, and no express statutory directive appears to bar that. *See Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 378 (2012) (absent statutory provision to the contrary, there is a strong presumption that state courts have concurrent jurisdiction over federal claims).

12

(internal quotation omitted).

This makes short work of CBD's appearance as a plaintiff. The complaint in this case alleges that FOGR and CBD share the same "concrete interests in the aesthetic, recreational, and spiritual enjoyment and protection of California's wild areas, including the Gualala River." *See* Dkt. No. 1 ¶ 13. Plaintiffs have not shown that the same community of interests was absent when FOGR acted as the plaintiff in the state action. Consequently, CBD's formal appearance as a party here does not forestall a preclusive effect from the state court cases.

Plaintiffs' contention that the United States Supreme Court has rejected a "virtual representation" theory of privity is of no moment. Dkt. No. 81 at 7-8 (citing *Taylor v. Sturgell*, 553 U.S. 880 (2008)). Plaintiffs overread *Taylor* to say that it has displaced the California test for privity. *See* Dkt. No. 81 at 8 n.3. To the contrary, *Taylor* is limited to the "preclusive effects of a judgment in a federal-question case decided by a federal court," *Taylor*, 553 U.S. at 904, which is not the situation at hand. *Taylor* contrasted this to the use of state preclusion rules when a federal court sits in diversity. *Id*. at 891 n.4. In addition, California state courts have continued to follow the community of interests approach after *Taylor*, as the Court of Appeal did in *Atwell*. Plaintiffs have not established that *Taylor* wrought a sea change in California privity law.

Plaintiffs also suggest that privity may not be found because there is a factual question about the adequacy of FOGR's advocacy in the state court. Dkt. No. 81 at 9-10. This is an odd thing to say, not only because FOGR is still in the room, but also because the state litigation was a hard-fought, multi-lawsuit battle that went on for several years, and resulted in significant changes to the Dogwood THP. Those positive outcomes were the fruits of FOGR's work. There is also a presumption that the parties in the prior action "diligently litigated" their positions, *Atwell*, 27 Cal. App. 4th at 704, and CBD has not demonstrated otherwise.

### C. A Public Interest Exception Does Not Apply

Plaintiffs' closing argument against preclusion relies on a public interest exception. Under this exception, "courts may permit relitigation of an issue of law concerning a public entity's ongoing statutory obligations that affect individuals and members of the public not specifically before the court in the first litigation." *San Diego Police Officers' Ass'n v. City of San Diego Civil*

13

*Servs. Comm'n*, 104 Cal. App. 4th 275, 279 (2002). Plaintiffs have not demonstrated that this exception applies here. To start, it is available only when a question of law is at stake, and not a question of fact. *City of Sacramento v. California*, 50 Cal. 3d 51, 64 (1990); *Citizens for Open Gov't v. City of Lodi*, 205 Cal. App. 4th 296, 327 (2012). The disputes over the Dogwood THP raised many factual questions far beyond pure questions of law. In addition, FOGR identifies itself as a non-profit organization devoted to protecting the public interest in preserving the Gualala River ecosystem. It is not at all clear who among the public or others potentially affected by the Dogwood THP were not effectively before the court in the FOGR's state cases.

Consequently, res judicata bars plaintiffs' claims in this case. As such, they have not demonstrated a likelihood of success on the merits, or a serious question that might warrant an injunction.

## III. REMAINING INJUNCTION FACTORS

This conclusion is enough to deny an injunction, and further consideration of the *Winters* factors is not necessary. *See Garcia*, 786 F.3d at 740; *Doe*, 586 F.3d at 681 n.14. For the sake of completeness, the Court notes that the remaining factors are not necessarily slam dunks for plaintiffs, even as tailored in favor of ESA plaintiffs by the cases discussed in the standards section. Plaintiffs devote a scant two paragraphs to irreparable harm in their opening brief, and three in their reply. These short sections are quite speculative, which will not do. *See Nat'l Wildlife Fed. v. Burlington N. R.R., Inc.*, 23 F.3d 1508, 1512 n.8 (9th Cir. 1994) (ESA injunction requires "a definitive threat of future harm to protected species, not mere speculation"). For example, the most recent species survey of the Dogwood THP area, which was conducted pursuant to take avoidance requirements promulgated by the U.S. Fish and Wildlife Service, did not find any northern spotted owls. Dkt. No. 76, Ex. C. Plaintiffs say this does not mean no owls are present, as they are hard to find in places like the Dogwood THP area, which are inhabited by predatory barred owls. *See* Dkt. No. 61 at 9. But the ESA requires a "reasonable certainty" that a taking of a listed species will occur. *See Marbled Murrelet v. Babbitt*, 83 F.3d 1060, 1068 (9th Cir. 1996). Plaintiffs have not carried that burden with evidence, and instead simply invite the Court to assume the owls must be out there, somewhere. That is not a basis for the extraordinary

14

relief of an injunction. The Dogwood THP also incorporates federal take avoidance requirements for the listed species of frog and owl, which further undercuts a potential showing of irreparable harm. *See* Dkt. No. 70, Ex. D (take avoidance requirements for red-legged frogs); Dkt. No. 77, Ex. A (take avoidance requirements for northern spotted owls).

For the salmonids, the Court declines to second-guess the careful assessments made by the state courts, which rejected many of the same arguments plaintiffs raise here. For example, the "trial court considered and rejected FOGR's claim that the [Dogwood THP] would negatively impact salmonids, finding it contained sufficient measures to reduce the possibility of soil migration and sedimentation in waterways." *Friends of Gualala River*, 2021 WL 672107, at *2. Plaintiffs try to resurrect that argument here, saying that take of the fish species will occur because of increased sediment in the river. Dkt. No. 61 at 13-14. And while plaintiffs contend that logging will reduce large woody debris in the Gualala River, an important component of the salmonids' habitat, Dkt. No. 61 at 12-13, the Court of Appeal upheld the revised THP specifically because it addressed concerns about "the recruitment of large woody debris to streams." *Friends of Gualala River*, 2021 WL 672107, at *12.

## CONCLUSION

A preliminary injunction is denied.

**IT IS SO ORDERED.**

Dated: August 3, 2021

JAMES DONATO
United States District Judge